IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50434
Summary Calendar
_____

LEON BURNEY,

Plaintiff-Appellant,

v.

JOHN CARRICK; MARILYN SANDERS,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Texas
(MO-97-CV-5-F)
_____

January 21, 1999

Before KING, Chief Judge, BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

Plaintiff-appellant Leon Burney alleges that defendants-appellees John Carrick and Marilyn Sanders violated his due process rights under the Fourteenth Amendment by releasing his daughter from a state hospital into the custody of a non-custodial parent. The district court granted defendants-appellees summary judgment on qualified immunity grounds. We affirm.

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.   FACTUAL & PROCEDURAL BACKGROUND

In 1992, plaintiff-appellant Leon Burney separated from and ultimately divorced Georgia Scott.  At that time, Georgia Scott moved to Albuquerque, New Mexico, maintaining custody of their eleven-year-old daughter, Christina Burney.  In July 1995, Christina became involved in violent altercations with her mother and stepfather.  Georgia Scott agreed to allow Christina to live with her father in Texas, and Burney was awarded legal custody of Christina by a New Mexico judge on August 23, 1995.

Christina's violent behavior continued, however, and Burney authorized Christina's detention at a state hospital on August 11, 1995.  Christina's treatment team at the hospital included defendants-appellees Marilyn Sanders, a social worker, and John Carrick, a physician.  After several months of treatment, the treatment team searched for an adequate placement site for Christina and suggested as early as November 1995 that Christina was ready for placement.

Conflict existed between Burney and the hospital treatment team as to an adequate placement for Christina.  Burney provided the hospital a copy of the court order awarding him custody of Christina, and he informed the hospital that Christina should not be released to her mother.  The treatment team discussed placing Christina with her father, but Christina threatened to run away or kill herself if she had to live with him.  The team also sought group-home placement, but was unable to find a home willing to accept Christina because of her history of aggressive

behavior.

The treatment team became more concerned with determining a suitable placement for Christina when the team noted that she was developing institutional behavior and becoming too attached to the hospital's staff in January 1996. The team found that patients like Christina tend to regress as the confinement period grows longer, but its search for an adequate group-home placement continued to be unsuccessful. Furthermore, Christina continued to distrust her father and "fell apart" when the option of living with him was discussed. By March 1996, the treatment team had exhausted all group-home options and determined that her mother's house constituted the "least harmful" alternative. The team also concluded that Christina no longer required in-patient treatment and it was therefore concerned about the legality of her continued detention.

While the treatment team pursued placement, Burney continued to insist that Christina could not be released to her mother. Sanders did not believe Burney's assertion that Christina could not be released to her mother and had grave concerns about releasing Christina to her father. Sanders therefore asked the judge who had issued the custody order about appropriate placement. The judge recommended that Christina write a letter requesting a change of custody back to her mother. Christina, with the assistance of Sanders, wrote two such letters in March 1996.

The judge conducted a hearing regarding Christina's request

on April 2, 1996. The judge stated that the State of Texas now had legal custody of Christina and could determine where she should be placed. On the basis of this presumption, the judge denied Christina's request for a change of custody, but he did not enter a written order until April 18, 1996. Sanders, who was not present at the hearing, learned about the details of the hearing from Georgia Scott. Sanders believed that the judge's presumption that Texas had custody of Christina was false because Burney had authorized her detention at the state hospital and therefore maintained custody. Sanders sent a facsimile to the judge on April 3, 1996, informing him of Christina's status and seeking to clarify whether the hospital could release Christina to her mother. The judge did not respond to the facsimile, however, and on April 4, 1996, his secretary told Sanders that he "would not be cutting any more orders."

The hospital purchased a ticket for Christina to return to Albuquerque on April 5, 1996, and released Christina to her mother. The hospital made this decision based on its conclusion that placement with her mother was in Christina's best interest and its belief that the New Mexico judge had effectively permitted them to do so despite the 1995 custody order. Burney sought Christina's return in New Mexico courts, but he was unsuccessful. In April 1997, the New Mexico judge modified the custody order to provide Georgia Scott with physical custody. Christina celebrated her eighteenth birthday in May 1998.

Burney filed this suit under 42 U.S.C. § 1983 in Texas state

4

court on November 25, 1996, alleging that Carrick and Sanders deprived him of his Fourteenth Amendment due process rights by infringing on his relationship with his daughter.  Carrick and Sanders removed the suit to the United States District Court for the Western District of Texas under 28 U.S.C. § 1441(b).  Carrick and Sanders asserted that their actions releasing Christina to her mother are protected from suit by qualified immunity, and the district court granted them summary judgment on that ground.  Burney timely appealed.

## II.  DISCUSSION

Burney alleges that the district court erred in granting Carrick and Sanders summary judgment on the basis of qualified immunity.  Burney asserts Carrick and Sanders are not entitled to qualified immunity because they knowingly and intentionally violated the custody order by releasing Christina into the custody of a non-custodial parent.  Burney contends that because a reasonable official would understand that Carrick's and Sanders's actions violated the custody order, their actions violated his clearly-established due process rights and were not objectively reasonable.

We review de novo a grant of summary judgment on the basis of qualified immunity.  See Correa v. Fischer, 982 F.2d 931, 932 (5th Cir. 1993).  Summary judgment is appropriate if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law determines which facts are material,

5

and the court must view these facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

It is well established that we must engage in a two-step inquiry to determine if a defendant is entitled to qualified immunity.  See Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir.), cert. denied, 119 S. Ct. 170 (1998); Kiser v. Garrett, 67 F.3d 1166, 1170 (5th Cir. 1995).  First, we must determine whether a public official's conduct deprived the plaintiff of a "clearly established" constitutional right.  See Siegert v. Gilley, 500 U.S. 226, 231 (1991); Kiser, 67 F.3d at 1170.  The assertion of a general constitutional right that is clearly established is not sufficient; "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense . . . [so] that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987); see Sanchez, 139 F.3d at 467 (noting that the "federal courts of appeal have taken an especially strict approach to determining whether a constitutional right is cognizable, thus resolving any doubts in the law against § 1983 plaintiffs"); Kiser, 67 F.3d at 1170.  Second, "a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was

objectively reasonable."[1]  Sanchez, 139 F.3d at 467.

Burney argues that the Supreme Court recognized a constitutional right to family integrity in Santosky v. Kramer, 455 U.S. 745 (1982), and Stanley v. Illinois, 405 U.S. 645 (1972).  Burney alleges that the conduct of Sanders and Carrick "goes beyond the abstract liberty interest" because the custody order names him as Christina's legal guardian, and Sanders and Carrick intentionally disregarded the court order.  Burney states that "[t]he contours of the court order are sufficiently clear that a reasonable official would understand that they were doing [sic] was violating the provisions of the court order."

Burney's assertion of a constitutional right to family integrity is too general to defeat a motion for summary judgment based on qualified immunity.  We rejected a similar argument in Hodorowski v. Ray, 844 F.2d 1210, 1217 (5th Cir. 1988), describing the right to family integrity as "nebulous" and stating:  "We think that the district court's formulation of the right was too general.  It is beyond dispute that many aspects of family integrity possess constitutional stature.  But reasonable government officials, knowing only that they must not infringe on family integrity, would not necessarily know just what conduct was prohibited."  Id.  We also found that the two cases relied on by the district court in that case, Santosky and Stanley,

---

[1]  Sanders and Carrick argue that qualified immunity is appropriate because their conduct was objectively reasonable. Because we find no evidence suggesting Sanders and Carrick infringed clearly-established constitutional rights, we do not reach this argument.

7

"highlight the unsuitability of such a general right to fix liability in particularized circumstances." Id.

Our decision in Hodorowski reflects our understanding of the difficult and important decisions social workers such as Sanders face when trying to balance parental rights against the prospect that a child is in immediate danger. We have noted that "because an interest in family integrity 'must always be balanced against the governmental interest [in the health, education, and welfare of children as future citizens], it is difficult, if not impossible, for officials to know when they have violated "clearly established" law.'" Doe v. Louisiana, 2 F.3d 1412, 1418 (5th Cir. 1993) (quoting Frazier v. Bailey, 957 F.2d 920, 929 (1st Cir. 1992)). We find this principle especially applicable in considering the limited choices that Sanders and Carrick faced here. Sanders and Carrick could either (1) place Christina with her father despite her resistance and their belief that it was not in her best interest; (2) place her with her mother despite the uncertain status of the custody order, or (3) risk her developing regressive behavior and possibly infringe her rights by continuing to detain her. Sanders and Carrick acted in what they believed was the best interest of Christina, and we decline to impose liability on them on the basis of Burney's assertion of a "nebulous" interest in family integrity.

Burney's allegation that Carrick and Sanders intentionally violated the custody order adds nothing to his argument that their conduct violated clearly-established constitutional law.

8

Burney fails to allege any source of law supporting his assertion that a state hospital that places a troubled youth with a parent not designated as custodial in a custody order deprives the other parent of due process rights, and we find none. In fact, the Eighth Circuit found that social workers who disregarded a court-ordered reunification plan were nonetheless entitled to qualified immunity and did not violate a parent's constitutional rights. See Ebmeier v. Stump, 70 F.3d 1012, 1012-13 (8th Cir. 1995). The court stated: "We take this opportunity to emphasize that violations of state laws, state-agency regulations, and, more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone." Id. at 1013; see Davis v. Scherer, 468 U.S. 183, 194 (1984) (holding that officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates a state statutory or administrative provision). We therefore agree with the district court that no genuine issue exists as to whether Burney's claims are supported by clearly-established constitutional law and that Sanders and Carrick are entitled to qualified immunity.

### III. CONCLUSION

For the foregoing reasons, we find that the district court correctly granted summary judgment in favor of defendants-appellees. The judgment is AFFIRMED.